*Power v. San Juan County, et al.*
USDC Western District of Washington at Seattle
**NOTICE OF REMOVAL**

# EXHIBIT 2

RECEIVED
MAY 31 2018
SAN JUAN COUNTY
PROSECUTING ATTORNEY

COUNTY CLERK OFFICE
FILED COPY
MAY 31 2018
LISA A. HENDERSON
SAN JUAN COUNTY, WASHINGTON

RECEIVED
MAY 31 2018
SAN JUAN
COUNTY AUDITOR

IN THE SUPERIOR COURT OF WASHINGTON
FOR THE COUNTY OF SAN JUAN

NICHOLAS POWER,

    Plaintiff,

v.

SAN JUAN COUNTY (a municipal subdivision of the State of Washington); and, MILENE HENLEY, San Juan County Auditor in her personal capacity; and, JOHN and JANE DOES, 1-99, Unknown San Juan County officials, employees and agents, in their personal capacity.

    Defendant.

No. 18-2-05075-28

**FIRST AMENDED COMPLAINT PURSUANT TO 42 U.S.C 1983 and 42 U.S.C. § 1985 AND MOTION TO MODIFY THE TEMPORARY RESTRAINING ORDER OF MAY 21, 2018 and MOTION FOR PRELIMINARY INJUCTION AND PERMANENT INJUNCTION PURSUANT TO CR 65**

1    THE LAW OFFICE OF NICHOLAS POWER
540 Guard St., Suite 150
Friday Harbor, WA 98250
360.298.0464

First Amended Complaint

COMES NOW, NICHOLAS POWER, a duly licensed attorney in the State of Washington and makes the following allegations and prayer for relief.

## I. PARTIES

1. Plaintiff, Nicholas Power, is a licensed attorney and current candidate for office of San Juan County Prosecuting Attorney.

2. Defendant, San Juan County, is a municipal subdivision of the State of Washington.

3. Defendant Milene Henley is the current San Juan County Auditor.

4. John and Jane Does 1-99, are as yet identified co-conspirators who violated or conspired to violate Plaintiff of his constitutional rights.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant 42 U.S.C. § 1983, 42 U.S.C. § 1985, and by the Uniform Declaratory Judgment Act RCW 7.24 et. seq.

6. Venue is appropriate in San Juan County as the statute alleged to be constitutionally infirm was promulgated by San Juan County and the conspiracy to deprive Plaintiff of his constitutional right of free speech was designed and orchestrated and undertaken in San Juan County and Plaintiff is subject to injury therefrom in San Juan County. Venue is also appropriate since Plaintiff is at risk of unconstitutional enforcement of that statute by San Juan County for constitutionally protected speech which, but for the infirm statute, would occur in San Juan County.

## III. FACTS

7. On May 18, 2018 Plaintiff filed to run as a candidate for the office of San Juan County Prosecuting Attorney in an election to be held on November 6, 2018

8. The office of Prosecuting Attorney is currently occupied by Randall Gaylord.

2    THE LAW OFFICE OF NICHOLAS POWER
540 Guard St., Suite 150
Friday Harbor, WA 98250
360.298.0464

First Amended Complaint

9. Mr. Gaylord has likewise filed to run for reelection to that office.

10. Plaintiff and Mr. Gaylord will be on the ballot for a primary election to be held on August 7, 2018.

11. Milene Henley is also running for re-election, though is unopposed.

12. As a challenger to a longstanding incumbent, Plaintiff has an acute need to communicate his candidacy to the electorate and political signage is a valuable tool to accomplish that end.

13. Plaintiff wishes to erect political signs including, but not necessarily limited to, those in support of his candidacy.

14. But for the Temporary Restraining Order ("TRO") issued by Court on May 21, 2018, Plaintiff is prohibited from doing so by San Juan County Code ("SJCC") 18.40.400(C) which was enacted in 1998 and provides: "Political signs shall be permitted outright; provided, *that they shall not be erected more than 45 days prior to an election* and shall be removed by the candidate or landowner no more than 72 hours following an election terminating candidacy. Political signs shall not exceed six square feet in area."

15. The County has known that the temporal restrictions in SJCC 18.40.400(c) have been unconstitutional since at least 2003.

16. Despite knowing of the unconstitutionality of the temporal restrictions, the County has kept SJCC 18.40.400(c) as part of its code continuously since 2003.

17. Restrictive political sign ordinances favor incumbents.

18. Defendants knowingly kept SJCC 18.40.400(c) "on the books" for the purpose of discouraging incumbents.

19. Defendants conspired to have a "gentleman's" agreement that SJCC 18.40.400(c) should remain "on the books" and would continue to publish that they were in effect and continue to officially promote adherence to the unconstitutional statute but know and knew that such a statute was unconstitutional and unenforceable.

20. Defendants conspired to keep the clearly unconstitutional statute "on the books" and officially have advocated to use such a statute as an official "guideline" for the County so as to disfavor challengers and favor incumbents.

21. Defendants conspired to urge the public that political signs should be regulated more strictly than is constitutionally allowed and that it is against the policy of San Juan County to favor only having such signs up for more than 45 days prior to an election.

22. Because the campaign season is already underway, every day that Plaintiff's speech is chilled because he cannot place a sign because of the threat of enforcement of SJCC 18.40.400, he is unable exercise his fundamental right of free speech. This is causing immediate, irreparable and substantial injury to Plaintiff and no adequate remedy at law is available.

23. Since the initial complaint (and, in fact, since the TRO in this matter), San Juan County Auditor Milene Henley sought to publish and, in fact, achieved publication an "op-ed" piece in various media outlets.

24. Milene Henley used her official county email to disseminate the attached "op-ed" piece. Her email and attachment are attached to the this pleading as Exhibit A.

25. Milene Henley used her official county letter-head for the "op-ed" piece.

26. Milene Henley conspired with John Does 1-99 to cause the publication of the "op-ed".

4

27. On information and belief, Milene Henley and Defendants John and Jane Does 1-99 knew or should have known that their actions were unconstitutional.

28. On information and belief, Milene Henley used her office for private benefit in violation of RCW 42.52.160.

29. On information and belief, Milene Henley used her office for political gain in violation of RCW 42.52.180

30. On information and belief, Milene Henley has engaged in an activity which is in conflict with her official duties in violation of RCW 42.52.020.

31. On information and belief, Milene Henley used public funds to finance political campaigns in violation of RCW 42.17A 550.

32. On information and belief, Milene Henley used her elective office to directly and indirectly assist a campaign for election of another person in violation of RCW 42.17A 555.

33. On information and belief, Milene Henley conspired with Defendants John and Jane Does 1-99 to publish the official "op-ed" to chill Plaintiff's First Amendment Rights.

34. The statutory duty of a county auditor includes the duty to be the agent for the government to ensure that elections are transparent, lawful and fair.

35. The statutory duty of a county auditor does not include the writing, dissemination, or publication of "op-ed" pieces.

36. The statutory duty of a county auditor does not include identifying "guidelines" that do not have the force of law when it comes to constitutionally protected political speech.

37. The statutory duty of a county auditor does not include making a pronouncement of the existence of "time honored local traditions to limit the amount of time political signs are displayed, and to politely remove them as soon as possible after an election is over."

38. The "op-ed" piece purported to be an official press release from San Juan County Auditor's Office.

39. The "op-ed" piece said that SJCC 18.40.400(c) "seemed like a good idea back in 1998, when the ordinance was not adopted.

40. In fact, the ordinance was not "a good idea" since it was conclusively found to be unconstitutional no later than 1993.

## IV. CAUSES OF ACTION

**1. Violation of Plaintiff's right to Free Speech under the Constitution of the United States of America and the Washington State Constitution.**

41. Plaintiff's First Amendment rights under the Constitution of the Untied States are violated by SJCC 18.40.400(c).

42. Plaintiff constitutional rights under Article 1, Section 5 of the Constitution of the State of Washington are violated by SJCC 18.40.400(c).

43. SJCC 18.40.400 is not only unconstitutional, it was clearly unconstitutional when it was enacted in 1998.

44. In 1993, Washington Supreme Court unanimously held unconstitutional an operatively identical temporal restriction in the City of Tacoma's Municipal Code ("TMC").

*Collier v. The City of Tacoma*, 121 Wn.2d 737, 854 P.2d 1046 (1993).

45. In *Collier*, TMC 2.05.275 defined and regulated political signs. That ordinance defined political signs as "[a]ll signs which are displayed out-of-doors on real property relating to the nomination or election of any individual for a public political office or advocating any measure to be voted on at any special or general election". Id. at 742.

46. TMC 2.05.275 the posting of such political signs to a period of not more than 60 days prior to and 7 days after the date of the election for which the signs are intended.

47. Specifically, TMC 2.05.275: "Such political signs shall not be displayed more than sixty days prior to and seven days after the date of the election for which intended. In cases where a general election follows within 55 days of a primary election, those signs for candidates whose names will appear on the ballot in the general election may be displayed during the interim period and up to seven days after the general election." Id. at 742-743.

48. The Court found that, "the Tacoma ordinances impermissibly restrict Collier's right to political expression in violation of article 1, section 5 of the Washington Constitution, and the first and fourteenth amendments to the United States Constitution. **We hold unconstitutional those portions of the Tacoma ordinances that impose durational limitations on the preelection posting of political signs.**" Id. at 763. Emphasis Supplied.

49. This ruling comports with analogous federal rulings. See, *City of Ladue v. Gilleo*, 512 U.S. 43 (1994). See also, *George's County, Md.*, 33 F. Supp. 2d 447 (D. Md. 1999) (striking down a virtually identical 45 day limit on political signage).

50. Accordingly SJCC 18.40.400(c) is facially unconstitutional and was facially unconstitutional the day it was enacted almost 20 years ago.

**2. Defendants Conspired to Deprive Plaintiff of His Right to Political Speech.**

First Amended Complaint

7

THE LAW OFFICE OF NICHOLAS POWER
540 Guard St., Suite 150
Friday Harbor, WA 98250
360.298.0464

51. Plaintiff hereby incorporates by reference each and every of the above paragraphs as if they were set forth in their entirety.

52. Pursuant to 42 U.S.C. §1985 the above-described acts are unlawful as Defendants have conspired to knowingly violate Plaintiff's constitutionally protected speech.

## V. PRAYER FOR RELIEF

1. That this Court find and declare the temporal clause in SJCC 18.40.400(c) is facially unconstitutional under both state and federal constitutions.

2. That this Court find and declare that the Defendant County and the Individual Defendants violated Plaintiff's right to free speech that are guaranteed under the United States and Washington Constitution.

3. That this Court find and declare that the Defendant County and the Individual Defendants conspired to violate Plaintiff's right to free speech that are guaranteed under the United States and Washington Constitution.

4. That this Court enter a temporary injunction – or modify the existing temporary injunction -- and prevent Defendants from using their offices or official positions to imply that SJCC 18.40.400 is an official guideline or policy of the County.

5. That the Court enter an Order that prohibits Defendants from enforcing, or threatening to enforce, or further publishing or continue to publish, state, advise or imply that the time limits of SJCC 18.40.400(c) are effective, or that the County has any official "guidline" as to the temporal duration that political signs can be erected.

6. That this Court enter a permanent injunction enjoining Defendant from enforcing, or threatening to enforce, or further publish or continue to publish, state, advise or imply that the time limits of SJCC 18.40.400(c) are legally effective.

7. That this Court order Milene Henley to retract the "op-ed" statement as such exceeded her statutory authority and that the unchecked publication of such continues to chill Plaintiff's right to speak freely about political matters.

6. That this Court order Milene Henley to cause to be published a court-authorized public announcement that correctly identifies the state of the law with respect to political and campaign signs and further publicly identifies the reason for the retraction. And that this Court further order that the announcement is disseminated to all recipients of the intitial "op-ed" piece and published for 4 consecutive weeks in the County's paper of record.

7. For fees and costs incurred by Plaintiff pursuant to 42 U.S.C. § 1988.

8. For fees and costs incurred by Plaintiff pursuant to RCW 4.84.185 and 4.84.250

9. For all other just, reasonable and equitable remedies.

SIGNED this 31th of May 2018.

THE LAW OFFICE OF NICHOLAS POWER

Nicholas Power, WSBA# 45974
Attorney for Plaintiff
540 Guard St., Suite 150
Friday Harbor, WA 98250
360.298.0464
nickedpower@gmail.com

# Exhibit A

Subject: Press Release regarding political signs
Date: Thu, 31 May 2018 01:41:53 +0000
From: Milene Henley <Mileneh@sanjuanco.com>
To: Island Guardian <editor@islandguardian.com>, Islands Sounder <publisher@islandssounder.com>, Islands Weekly <publisher@islandsweekly.com>, Lopez Rocks <info@salishrocks.org>, Orcas Issues (editor@orcasissues.com) <editor@orcasissues.com>, San Juan Islander <sharon@sanjuanislander.com>, San Juan Journal (editor@sanjuanjournal.com) <editor@sanjuanjournal.com>, Tim Dustrude (editor@sanjuanupdate.com) <editor@sanjuanupdate.com>

Good evening!

The attached is really more of an op-ed piece than "news," so do with it as you will.

Thanks!
Milene

F. Milene Henley
San Juan County Auditor
*(360) 370-7558*





# F. Milene Henley, Auditor
# San Juan County

PO Box 638  Friday Harbor, Washington 98250
(360) 378-2161  FAX (360) 378-6256

**PRESS RELEASE**

**May 30, 2018**



It's election time, and with that comes the annual crop of political signs, popping up like pesky dandelions across the countryside. We've been fortunate in San Juan County. A well-meaning ordinance – now de-toothed by a recent court action – combined with strong local sentiment has kept our sign infection at a minimum.

Political signs, according to San Juan County land use code, are permitted, so long as they are put up not more than forty-five days before an election and taken down within three days after. It seemed like a good idea back in 1998, when the ordinance was adopted. Nobody wanted to see the landscape permanently blighted with signs, especially in a community such as ours, a place people come for the natural environment and rural appearance. Constraining signs to a well-defined time period seemed like a reasonable compromise.

Political signs do serve a purpose. In a rural area, where radio or TV spots aren't practical, yard signs may be the only way for a candidate to get his or her name out there. Anecdotal stories about the unexpected election of candidates with no qualifications but familiar-sounding names suggest that people are, indeed, more likely to vote for a name they've seen often than for one they've never seen.

Political strategists say that supporters love political signs. Supporters of a measure or a candidate may not have time to campaign, but they can show their allegiance by sticking a sign in their yard. A corollary of this phenomenon is that some voters are influenced less by the content of signs than by their location. If someone they respect is proudly sporting a yard sign, the voter may be more inclined to vote the same way.

Other political strategists opine that signs have little, if any, effect on how people vote. The small effect they do have may be offset by the votes they lose because of other voters' distaste for signs. Resources spent buying and locating signs could better be used, many campaign managers argue, on doorbelling and direct mail.

As an administrator of elections, I like yard signs because they remind people there's an election coming up. Not so much in some mainland locations, where signs go up eighteen months before an election. But San Juan County's law – given recent events, let's just call it a "guideline" – because it limits the duration of the signage, effectively alerts people that it's almost time to vote.

Of course, the reason courts have struck down San Juan County's, as well as other, political signage laws is that limiting signage infringes on free speech. Like babies and apple pie, free speech is something you don't mess with.

San Juan County's political sign ordinance has never been enforced. Still, it has become a time-honored local tradition to limit the amount of time political signs are displayed, and to politely remove them as soon as possible after an election is over. We may someday look back on those days wistfully. Or maybe a short-lived law will have created an enduring local tradition. Only time, and candidates, will tell.